## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KIRK D. ANDERSON #126329**                    **CIVIL ACTION**

**versus**                                                            **NO. 05-2169**

**BURL CAIN, WARDEN**                           **SECTION: "N" (1)**

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Kirk D. Anderson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 20, 1994, he was convicted of forcible rape, second degree kidnapping, and aggravated crime against nature in violation of La.Rev.Stat.Ann. §§ 14:42.1, 44.1, and 89.1.[2]  On January 10, 1995, he was found to be a multiple offender and was sentenced as such on the forcible rape conviction to a term of eighty years imprisonment, without benefit of probation, parole, or suspension of sentence.  On that same date, he was also sentenced to a term of five years imprisonment on the second degree kidnapping conviction and to a term of fifteen years imprisonment on the aggravated crime against nature conviction, and it was ordered that those sentences also be served without benefit of probation, parole, or suspension of sentence.  It was additionally ordered that all of the sentences run concurrently and that he be given credit for time served.[3]

On direct appeal, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's convictions.  However, because there were motions for a new trial and for judgment of acquittal notwithstanding the verdict still pending before the trial court at the time of sentencing, petitioner's sentences were vacated and the matter was remanded for resentencing.[4]

On February 5, 1997, petitioner was resentenced to forty years imprisonment on the forcible rape conviction, fifteen years imprisonment on the aggravated crime against nature

---

[2]  State Rec., Vol. I of III, minute entry dated July 30, 1994; State Rec., Vol. I of III, jury verdict forms.

[3]  State Rec., Vol. I of III, transcript of January 10, 1995.

[4]  State v. Anderson, 679 So.2d 181 (La. App. 4th Cir. 1996) (No. 95-KA-1252); State Rec., Vol. I of III.

conviction, and five years imprisonment on the second degree kidnapping conviction, with all sentences to run concurrently and without the benefit of probation, parole, or suspension of sentence.[5]  On April 18, 1997, petitioner was then again found to be a multiple offender and was resentenced as such with respect to the forcible rape conviction to a term of eighty years imprisonment without benefit of probation, parole, or suspension of sentence.[6]  Petitioner again appealed.  On November 18, 1998, the Louisiana Fourth Circuit Court of Appeal affirmed the multiple offender adjudication.  However, because the trial court resentenced petitioner as a multiple offender without first vacating the original sentence as required by state law, that sentence was vacated and the matter was once again remanded to the state district court for resentencing.[7]

Although the fact cannot be established from the state court record provided to this Court, petitioner alleges that he was subsequently resentenced by the state district court to the exact same sentence, i.e. a term of eighty years imprisonment without benefit of probation, parole, or suspension of sentence.  He further alleges that the judgment was then affirmed by the Louisiana Fourth Circuit Court of Appeal.[8]  For the purposes of this decision, this Court will assume that those allegations are true.[9]

---

[5] State Rec., Vol. II of III, minute entry dated February 5, 1997.

[6] State Rec., Vol. II of III, transcript of April 18, 1997; State Rec., Vol. II of III, minute entry dated April 18, 1997.

[7] State v. Anderson, 728 So.2d 14 (La. App. 4th Cir. 1998) (No. 97-KA-2587); State Rec., Vol. II of III.

[8] Rec. Doc. 3, supporting memorandum, p. 2.

[9] On October 11, 2005, this Court ordered that, on or before November 14, 2005, the Orleans Parish District Attorney supplement the record with documentation showing when petitioner was resentenced pursuant to the appellate court's order and whether appellate review was sought with

Although the state district court record has not been produced as ordered,[10] petitioner further alleges that he subsequently sought post-conviction relief in that court.

On or about May 6, 2002, he apparently filed with the state district court a "Motion to Vacate and Correct an Illegal Sentence."[11]  When the state district court apparently failed to rule on that motion, petitioner filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus.[12]  That application was denied on May 18, 2004.[13]  He then filed with the Louisiana Supreme Court a petition for a supervisory writ[14] which was denied on February 4, 2005.[15]

On or about April 23, 2003, he apparently filed with the state district court another "Motion to Vacate and Correct an Illegal Sentence."[16]  When the state district court apparently failed to rule on that motion, petitioner filed with the Louisiana Fourth Circuit Court of Appeal an

---

respect to that resentencing.  Rec. Doc. 6.  The District Attorney failed to comply with that order.

[10]   At the time the state's response was filed, the state district court record was unavailable.  This Court ordered that the Orleans Parish District Attorney again attempt to obtain a copy of that record and furnish it to this Court on or before November 14, 2005.  If the district court record was still not available, the District Attorney was to inform this Court of that fact.  Rec. Doc. 6.  The District Attorney failed to comply with that order.

[11]   State Rec., Vol. III of III.

[12]   State Rec., Vol. III of III.

[13]   State v. Anderson, No. 2004-K-0506 (La. App. 4th Cir. May 18, 2004); State Rec., Vol. III of III.

[14]   State Rec., Vol. III of III.

[15]   State ex rel. Anderson v. State, 893 So.2d 97 (La. 2005) (No. 2004-KH-1568); State Rec., Vol. III of III.

[16]   State Rec., Vol. III of III.

application for a writ of mandamus.[17]  That application was denied on February 9, 2004.[18]  He then filed with the Louisiana Supreme Court a petition for a supervisory writ[19] which was denied on February 4, 2005.[20]

On June 2, 2005, petitioner filed the instant application for federal *habeas corpus* relief.[21]  In support of his application, petitioner claims:

1.      Petitioner was denied the right to appeal his convictions;

2.      The Louisiana Supreme Court erroneously denied petitioner's post-conviction motions challenging his sentence;

3.      Petitioner was illegally sentenced prior to a ruling on his post-verdict motions, and the state appellate courts erred in failing to require the trial court to rule on those motions; and

4.      Petitioner was illegally denied parole eligibility.[22]

---

[17]  State Rec., Vol. III of III.

[18]  State v. Anderson, No. 2003-K-2234 (La. App. 4th Cir. Feb. 9, 2004) (unpublished); State Rec., Vol. III of III.

[19]  State Rec., Vol. III of III.

[20]  State *ex rel.* Anderson v. State, 893 So.2d 97 (La. 2005) (No. 2004-KH-0734); State Rec., Vol. III of III.

[21]  Rec. Doc. 3.

[22]  The claims listed on petitioner's § 2254 form differ from the claims discussed in his supporting memorandum.  Out of an abundance of caution, this Court has consolidated and will review the claims set forth in both documents.

<u>Timeliness</u>

The state argues that petitioner's federal application is untimely.[23]  Generally, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).[24]

The Louisiana Fourth Circuit Appeal issued its judgment on petitioner's second direct appeal on November 18, 1998.  The state contends that the AEDPA's statute of limitations commenced thirty days later, when petitioner's period expired for seeking review of that judgment by the Louisiana Supreme Court.  The merit of that contention is questionable.

This Court is not convinced that the state is looking to the relevant triggering event. Although the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's multiple offender adjudication in that judgment, it also vacated his sentence and remanded the matter for resentencing. At some unknown time, petitioner was apparently resentenced by the state district court, and that sentence was apparently affirmed in a third direct appeal.  It is pursuant to *that* judgment that petitioner is currently incarcerated, and, therefore, it is arguably that judgment which is the triggering event for AEDPA purposes.  Because the parties have failed to provide any information as to when the final resentencing took place or when that sentence was affirmed on appeal, if in fact that occurred, the Court cannot determine when the statute of limitations commenced and expired.

---

[23]  Rec. Doc. 5.

[24]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

Accordingly, although petitioner's federal application may well be untimely, the Court is unable to make that determination on the record before it.

However, because petitioner is not entitled to federal *habeas corpus* relief in any event, the undersigned recommends that his federal application simply be considered and rejected on the merits for the reasons set forth below.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On petitioner's first direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> At the time of the incident, the victim [FN] was staying at the apartment of her cousin and her cousin's boyfriend.  Her cousin used the bedroom and the victim slept on the couch.  Late on the night of February 14, 1993, the victim received a call from a male friend that she had known for about a week.  He told her he was coming over to visit.  When he arrived, Mr. Anderson, who was his cousin, was with him.  The victim and the two talked for a while.  Mr. Anderson asked the victim to step outside with him for a moment, which she did.  He then grabbed her by the neck and dragged her away.  The victim's friend started to intercede, but stopped when Mr. Anderson threatened to kill her.  The friend then called the police to report a kidnapping, possibly involving a weapon, and gave the police a description of Kirk Anderson.  Officer Lisa Williams, who responded to the call, went with Mr. Anderson's cousin to look for Mr. Anderson and the victim.

> > [FN] Considering the nature of the offense, the victim's name is not used in this opinion in keeping with the policy of this court.

> Meanwhile, Kirk Anderson dragged the victim to a vacant lot with overgrown grass and weeds and proceeded to force her to perform oral sex, face-to-face vaginal intercourse and vaginal intercourse from the rear.  During intercourse he told the victim he had been "wanting to f- somebody."  After Mr. Anderson finished, he

asked the victim if she would tell anyone and she assured him she would not. They then walked together back to the apartment where the victim was staying, but no one answered their knock. Mr. Anderson left and the victim knocked on the door of someone else in the building, who let her in.

Investigating officer, Detective Joseph Goines, observed a fake fingernail by the front door of the apartment, which was apparently torn from the victim's finger as she was forcefully taken away. Officer Goines also observed scratches on the victim's arms, legs, and neck. The examining doctor found bruises on the victim's neck and scratches on her legs and lacerations to her vagina which were consistent with the history presented and with non-consensual intercourse. He further found semen on the liner of the victim's panties.

Detective Goines obtained a photo line-up which he presented to the victim, who positively identified Kirk Anderson as her assailant. Mr. Anderson was arrested three months later at his home in Baton Rouge.

Mr. Anderson admitted that he was the person who left the apartment with the victim and further admitted to oral and vaginal intercourse. However, he said that it was not only consensual, but that the victim came on to him. He suggested that he had been set up by his cousin, of whom he had gotten the better at an altercation a week prior to the incident. He admitted that he did not turn himself in even though he knew the police were looking for him. On cross-examination, Mr. Anderson admitted that he was on parole for armed robbery, to which he pled guilty, but denied that he was guilty of that offense.[25]

### Denial of Right to Appeal

Petitioner's first claim is that he was denied the right to appeal his convictions. In that the United States Constitution does not generally mandate a right to appellate review, this Court questions whether petitioner's claim regarding the denial of an appeal is even cognizable in a federal *habeas corpus* proceeding. See Lawrence v. Lensing, 42 F.3d 255, 258 (5th Cir. 1995). However,

---

[25] State v. Anderson, 679 So.2d 181, 182-83 (La. App. 4th Cir. 1996) (No. 95-KA-1252); State Rec., Vol. I of III.

even if the Court assumes that such a claim is cognizable, petitioner's claim is not supported by the state court record in this case.

Petitioner in fact appealed his convictions in his first direct appeal, and the convictions were affirmed by the Louisiana Fourth Circuit Court of Appeal on July 31, 1996.[26] Petitioner did not challenge that judgment by filing a writ application with the Louisiana Supreme Court.

Because petitioner's sentences had been vacated in his first direct appeal, he was subsequently resentenced.  He then filed another appeal, that time challenging his convictions, habitual offender adjudication, and sentences.  However, the Louisiana Fourth Circuit Court of Appeal held that his convictions had already been reviewed and affirmed and, therefore, were no longer subject to direct review:

> Mr. Anderson makes several claims of trial court error.  However, his conviction has been affirmed, State v. Anderson, [679 So.2d 181 (La. App. 4th Cir. 1996),] and that judgment has become final.  See La. Code Crim. Proc. 922.  Therefore, Mr. Anderson may appeal only his resentencing.  These alleged trial errors should have been raised in Mr. Anderson's first appeal.  Any issues not raised in the original appeal, which could have been raised, are considered waived.  State v. Freeman, 565 So.2d 1084 (La. App. 4th Cir. 1990).[27]

---

[26]   State v. Anderson, 679 So.2d 181 (La. App. 4th Cir. 1996) (No. 95-KA-1252); State Rec., Vol. I of III.

[27]   State v. Anderson, 728 So.2d 14, 18 (La. App. 4th Cir. 1998) (No. 97-KA-2587); State Rec., Vol. II of III.  Petitioner argues that, in the first direct appeal, the Louisiana Fourth Circuit Court of Appeal should have included a proviso that he would be allowed to again challenge his conviction in a subsequent appeal, as the Louisiana Supreme Court had done in the arguably similar case of State v. Randolph, 409 So.2d 554 (La. 1982).  However, the Louisiana Supreme Court did not mandate in Randolph that such a proviso be included in such cases, and the state appellate courts often do not include a similar proviso, especially where, as in the instant case, the post-verdict motions were ruled on prior to the appellate court's decision.  See, e.g., State v. Hodges, 749 So.2d 732 (La. App. 4th Cir. 1999); State v. Brown, 620 So.2d 508 (La. App. 4th Cir. 1993).  Moreover, if petitioner believed that the intermediate appellate court erred either in not including the proviso in

Additionally, the Fourth Circuit reviewed and rejected petitioner's challenges to his habitual offender adjudication. However, the court again set aside petitioner's sentence and remanded the matter for resentencing. Petitioner did not challenge that judgment by filing a writ application with the Louisiana Supreme Court.

Petitioner alleges that when he was again resentenced, he again appealed and the Louisiana Fourth Circuit Court of Appeal affirmed.[28] There is no allegation or evidence that he then challenged that judgment by filing a writ application with the Louisiana Supreme Court.

In summary, there is no evidence that petitioner was ever denied the right to appeal. Rather, the record reflects otherwise. It is clear that petitioner was afforded a direct appeal of his convictions, those convictions were affirmed, and he did not seek discretionary review from the Louisiana Supreme Court. Likewise, he was afforded a direct appeal of his habitual offender adjudication, the habitual offender adjudication was affirmed, and he did not seek discretionary review from the Louisiana Supreme Court. Lastly, apparently he appealed his final resentencing, his sentence was affirmed, and he did not seek discretionary review from the Louisiana Supreme Court. Clearly, therefore, he has not been denied appellate review in any sense.

<u>Louisiana Supreme Court Rulings</u>

Petitioner next claims that the Louisiana Supreme Court erred in invoking La.C.Cr.P. art. 930.8 as the basis for denying his writ applications. Petitioner filed two petitions for supervisory writs which were docketed as case numbers 04-KH-734 and 04-KH-1568. On February 4, 2005,

---

its 1996 decision or in imposing the procedural default in its 1998 decision, then he should have challenged either or both of those decisions by filing a writ application with the Louisiana Supreme Court. However, he did not seek review of either judgment.

[28] Rec. Doc. 3, supporting memorandum, p. 2.

the Louisiana Supreme Court denied those applications by issuing identical orders citing the following authorities: La.C.Cr.P. art. 930.8; State v. Parker, 711 So.2d 694 (La. 1998); State *ex rel.* Melinie v. State, 665 So.2d 1172 (La. 1996); and State *ex rel.* Glover v. State, 660 So.2d 1189 (La. 1995).[29]  Article 930.8, Parker, and Glover concern the time limits for seeking post-conviction relief under Louisiana law, while Melinie holds that sentencing errors may not raised in state post-conviction proceedings.   Accordingly, the Louisiana Supreme Court denied petitioner's writ applications based solely on that court's application and interpretation of state law.  Even if the Louisiana Supreme Court erred, that would be of no moment in this federal *habeas corpus* proceeding.   "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Issac, 456 U.S. 107, 119 (1983).

Post-Verdict Motions

Petitioner next claims that, in violation La.C.Cr.P. arts. 821(A) and 853, the trial court failed to rule on his motions for a new trial and for post-verdict judgment of acquittal before imposing sentence.  He further argues that the state appellate courts erred in failing to require the trial court to rule on those motions.

However, as noted previously, in his first direct appeal, petitioner's sentences were vacated on that precise basis:

---

[29]  State *ex rel.* Anderson v. State, 893 So.2d 97 (La. 2005) (No. 2004-KH-1568); State *ex rel.* Anderson v. State, 893 So.2d 97 (La. 2005) (No. 2004-KH-0734); State Rec., Vol. III of III.

A review of the record for patent errors indicates that motions for new trial and for judgment of acquittal notwithstanding the verdict were filed prior to sentencing but were never considered, in contravention of La. C.Cr.P. arts. 853 and 861. These motions were eventually heard on remand from this court. [FN]  Because the motions were pending at the time of sentencing, the appellant's sentences should be vacated and the case remanded for resentencing. See State v. Randolph, 409 So.2d 554 (La. 1981); State v. Brown, 620 So.2d 508 (La. App. 4th Cir. 1993), writ den., 625 So.2d 1062 (1993).

> [FN]  On February 22, 1996, this court ordered the trial court to consider the motion for new trial within thirty days.  Per submitted minute entries, on March 22, 1996 the defendant appeared with counsel and requested that he be allowed to hire counsel.  The matter was then set for hearing to determine counsel. On April 4, 1996, the defendant appeared with counsel and the motion was denied.[30]

When petitioner was subsequently resentenced, it is evident that, at least according to the state courts, the motions in question were no longer pending.

Petitioner essentially argues that the minute entries in his case do not conclusively establish that the motions were in fact denied and, therefore, the appellate court erred in holding otherwise.  It is true that the minute entries are somewhat vague, and no transcripts have been provided to this Court which evidence a ruling on the motions.  Nevertheless, petitioner's own appellate brief submitted in connection with his second direct appeal indicate that the motions were in fact denied.[31]

Moreover, in any event, whether or not the motions were in fact ruled upon prior to petitioner's final sentencing in this case is immaterial.  The requirement that the trial court rule on

---

[30]  State v. Anderson, 679 So.2d at 183; State Rec., Vol. I of III.

[31]  State Rec., Vol. II of III, appellant's brief, pp. 14-15 and 17-19.

such motions prior to sentencing is a requirement imposed by La.C.Cr.P. arts. 821(A) and 853. Even if those state laws were violated, petitioner could not be granted relief for such an error in this federal forum. As previously noted, federal *habeas corpus* relief may be granted only to remedy violations of *federal*, not state, law.

<u>Denial of Parole Eligibility</u>

Petitioner's final argument is that, in violation of Louisiana law, he was wrongly denied parole eligibility in connection with his habitual offender sentence. As previously noted, this Court has not been provided with records relating to petitioner's final resentencing in this case. However, for the purposes of this decision, the Court will accept as true petitioner's allegation that he was resentenced as a habitual offender to a term of eighty years imprisonment without benefit of probation, parole, or suspension of sentence.

The issue of whether Louisiana statutes permit or require parole eligibility for someone in petitioner's circumstances is obviously also a matter of state law,[32] and, as such, should

---

[32] The Court notes that, in connection with petitioner's second direct appeal, the Louisiana Fourth Circuit vacated petitioner's habitual offender sentence to a term of eighty years imprisonment without benefit of probation, parole, or suspension of sentence. However, that sentence was vacated based solely on a technicality, i.e. the trial court failed to vacate petitioner's original sentence, as required by state law, prior to resentencing him as a habitual offender. In the interest of judicial economy, however, the Fourth Circuit expressly rejected petitioner's contention that the sentence was excessive. <u>State v. Anderson</u>, 728 So.2d 14, 20-22 (La. App. 4th Cir. 1998) (No. 97-KA-2587); State Rec., Vol. II of III.

The Court also notes that petitioner indicates that he appealed his final resentencing and that his sentence was affirmed. Any such claim should have been raised in that appeal and, if he was dissatisfied, he should have sought review at that point by the Louisiana Supreme Court.

Additionally, the Louisiana Fourth Circuit Court of Appeal considered petitioner's claim that he was wrongly denied parole eligibility and rejected it as a matter of state law. <u>State v. Anderson</u>, No. 2004-K-0506 (La. App. 4th Cir. May 18, 2004); State Rec., Vol. III of III. Petitioner also sought review of that decision by the Louisiana Supreme Court, and his writ application was denied. <u>State ex rel. Anderson v. State</u>, 893 So.2d 97 (La. 2005) (No. 2004-KH-1568); State Rec., Vol. III of III.

not be revisited in this federal forum.  Petitioner does not allege, and this Court does not find, that

his sentence without eligibility for parole violates the United States Constitution.[33]  Accordingly,

his claim is not cognizable.

---

[33]  Out of an abundance of caution, the Court notes that petitioner's sentence certainly does not run afoul of the Eighth Amendment prohibition against cruel and unusual punishment on the basis that it is excessive.  The United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence.  Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses."  Id.

The Fifth Circuit has further noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment."  United States v. Gonzales, 121 F.3d 928, 943 (5th Cir. 1997).  In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.  The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate  punishments is an inherently subjective judgment, defying bright lines and neutral principles of law.  Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In this case, petitioner's predicate conviction was for the grave offense of armed robbery, and his present habitual offender sentence is imposed with respect to the grave offense of forcible rape.  In light of those facts, and considering the Rummel finding that a life sentence was not excessive when imposed for a nonviolent offense where the habitual offender had two prior nonviolent offenses, this Court has no hesitation in concluding that petitioner's habitual offender eighty-year sentence without benefit of probation, parole, or suspension of sentence was not constitutionally excessive.

**<u>RECOMMENDATION</u>**

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Kirk D. Anderson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of June, 2006.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**